UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY PAUL BRYANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-CV-20-CMS |
| | ) | |
| CENTURION MEDICAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Self-represented prisoner Jeffrey Paul Bryant brings this action under 42 U.S.C. § 1983 for alleged medical indifference. ECF Nos. 1, 7. The matter is now before the Court upon the motion of Plaintiff for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. ECF No. 2. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $3.00. *See* 28 U.S.C. § 1915(b)(1). As Plaintiff is now proceeding *in forma pauperis*, the Court must review his complaint under 28 U.S.C. § 1915. Based on such review, the Court will dismiss the complaint for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). All other pending motions[1] will be denied as moot.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her

---

[1] Plaintiff has also filed a motion for appointment of counsel (ECF No. 4) and a motion to move to a different facility (ECF No. 5). Both motions will be denied as moot because this case is being dismissed, but the Court notes that the motion to move to a different facility is also moot because Plaintiff filed it while confined at Southeast Correctional Center and he has since been moved to the Mississippi County Jail. *See* ECF No. 10.

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior 6-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid.  *Id.*

Plaintiff is a convicted state prisoner currently incarcerated at the Mississippi County Jail in Charleston, Missouri.  ECF Nos. 1 at 2; 10 at 1.  In support of his motion to proceed without prepaying fees and costs, Plaintiff submitted an inmate account statement showing an average monthly deposit of $15.00 and an average monthly balance of $12.55 (as of the tenth of each month), over a 6-month period.  ECF No. 9-1.  The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $3.00, which is twenty percent of Plaintiff's average monthly deposit.  *See* 28 U.S.C. § 1915(b)(1).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered

- 2 -

within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). Still, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

**Plaintiff's Complaint and Supplement**

Although Plaintiff is currently confined at the Mississippi County Jail, he filed this action concerning conditions of confinement at his prior place of incarceration—the Southeast Correctional Center ("SECC"). ECF No. 1 at 2. Plaintiff seeks relief under 42 U.S.C. § 1983, alleging nine (9) Defendants associated with healthcare services at SECC failed to treat him and/or provided inadequate medical care in February and March 2025. *Id.* at 2-7. Defendant Centurion is the medical services provider contracted with the Missouri Department of Corrections ("MDOC") to provide statewide correctional healthcare for incarcerated people at correctional facilities across the state of Missouri, including SECC. The other eight Defendants are employees of Centurion at SECC, including two nurses, three medical technicians, an x-ray technician, a medical site supervisor, and an unknown member of the medical staff. *Id.* at 3-5. Centurion is

named in its official capacity, and the individual Defendants are named in both their individual and official capacities. *Id.* at 2-5. For relief, Plaintiff seeks monetary damages. *Id.* at 9.

According to Plaintiff, on February 27, 2025, he overdosed on fentanyl at SECC and suffered a medical emergency. During the emergency, he injured his left hand. He states that he informed the nurse Defendants—Sorabello and Wilson—of the injury. Nurse Wilson wrapped the injury, gave him an ice pack, and provided him with "lay-in" documentation. Following his post-overdose observation period, Plaintiff was moved to segregation where he asserts that he notified the Defendant medical technicians and submitted Health Service Requests ("HSRs") daily concerning "extreme pain," swelling, and that the palm of his left hand "had turned black." *Id.* at 6. Plaintiff continued these daily healthcare complaints and requests until March 24, 2025, when he was released from segregation.

Once out of segregation, Plaintiff "self-declared" and was taken to see an unnamed nurse. *Id.* at 6-7. That nurse said that "there was nothing she could do about [Plaintiff's] injury at that time" and "threatened to remove [the] ace bandage due to [the] lay-in expiring." *Id.* at 7. The next day, March 25, 2025, Plaintiff self-declared again and "this time [he] refused to leave medical until [his] injury was addressed." Plaintiff saw nurse Sorabello, complaining about not receiving an x-ray in the month since his hand injury. An x-ray taken that same day showed a broken "pinky finger." Plaintiff saw an "outside orthopedic doctor" two weeks later. *Id.*

Overall, Plaintiff alleges that Defendants failed to provide medical treatment, acted with medical neglect, and violated his Eighth Amendment right to be free of cruel and unusual punishment. *Id.* at 3, 6. Plaintiff complains that Defendants failed to treat his injury despite the "numerous" times he notified them of the injury and, as a result, it went "unaddressed for roughly a month." *Id.* at 7-8. Plaintiff filed a handwritten supplement to his Complaint, approximately a

- 4 -

month after initiating this action, restating the facts and that Defendants' actions constitute "medical indifference."  ECF No. 7.

Plaintiff attached prison paperwork as exhibits to his Complaint.[2]  ECF No 1-1.  According to the paperwork, Plaintiff filed his first Informal Resolution Request ("IRR") regarding this issue on March 12, 2025—approximately two weeks after the injury occurred.  *Id.* at 7 (IRR Number: SECC-25-257).  In that IRR, Plaintiff complained that he had submitted three HSRs about his hand injury but that he had received "no medical attention," "no x-ray," "nothing for pain," and "no ICE."  *Id.*  The institutional response to the IRR—dated May 8, 2025—discussed that SECC healthcare providers were focused on "life-saving measures" immediately after the overdose and that, according to records, his first HSR concerning his hand injury was not filed until March 10, 2025, when he requested an x-ray.  *Id.* at 8.  Plaintiff had the x-ray on March 25; a doctor reviewed it on March 27 and noted the fracture to his fifth digit; a referral to a hand specialist was approved the next day; and Plaintiff saw the specialist on April 9.  Following that institutional response, Plaintiff filed a Grievance, dated May 16, complaining that the treatment he received for his hand was not "timely/appropriate."  *Id.* at 9.  He received essentially the same response as the response to his IRR.  *Id.*  At some point, Plaintiff also filed a second IRR that made similar allegations and contained duplicative responses.  *Id.* at 4-6 (IRR Number: SECC-25-315).

Finally, Plaintiff submitted exhibits showing that he received "ice and ace wrap" on February 27, 2025, and a "bag and roll of tape for showering" on March 26, 2025.  *Id.* at 2-3.  On some unspecified date, he filed a third IRR regarding the replacement of his ace wrap due to mace contamination.  *Id.* at 10-11 (IRR Grievance Number: SECC-25-365).

---

[2] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits.  *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

**Discussion**

After careful review and liberal construction of the allegations of self-represented Plaintiff in the Complaint and Supplement, the Court concludes that this case is subject to dismissal for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). The facts pled fail to establish that Defendants provided deliberately indifferent medical care in violation of Plaintiff's Eighth Amendment rights.

## I.        Eighth Amendment Legal Standard

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment, which protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on a deliberate indifference claim, a prisoner plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted). Allegations of mere negligence in giving or

- 6 -

failing to supply medical treatment will not suffice.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate

indifference.  *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Deliberate indifference may also be demonstrated by prison officials who intentionally

deny or delay access to medical care.  *Estelle*, 429 U.S. at 104-05.  When a delay in treatment is

alleged to have violated an inmate's constitutional rights, a court measures the objective severity

of the deprivation "by reference to the *effect* of the delay in treatment."  *Jackson v. Riebold*, 815

F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*,

430 F.3d 927, 929 (8th Cir. 2005)).  To support a claim based on a delay in treatment, a plaintiff

must present "verifying medical evidence" showing that the delay in treatment had detrimental

effects.  *Id.* at 1119-20*; see also Holden*, 663 F.3d at 342 ("A prisoner alleging a delay in treatment

must present verifying medical evidence that the . . . delays adversely affected his prognosis.")

(quoted case omitted).

## II.    Defendant Centurion and Official Capacity Claims against Individual Defendants

Defendant Centurion is the private corporation contracted to provide medical services to

prisoners at SECC.  In order to state a claim against a corporation like Centurion, Plaintiff "must

show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson*

*v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972,

975-76 (8th Cir. 1993) (stating that a corporation acting under color of state law will be held liable

only where "there is a policy, custom or action by those who represent official policy that inflicts

an injury actionable under § 1983").

Similarly, to state a claim against a government official in his or her official capacity, a

plaintiff must allege that a policy or custom of the government entity is responsible for the alleged

constitutional violation.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978).  Naming

a government official in his or her official capacity is the equivalent of naming the government

entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

In this case, Plaintiff's pleadings do not contain any assertions that the alleged violations

of his Eighth Amendment rights were the result of an official Centurion policy, an unofficial

Centurion custom, or a failure by Centurion to train or supervise its employees. Such allegations

are necessary to state a claim against Centurion or an official capacity claim against Centurion

employees. *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district

court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would

demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's

rights). Therefore, Plaintiff's claim against Centurion and his official capacity claims against all

Defendants must be dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B).

## III.    Individual Capacity Claims against Centurion Employees

As stated above, in order to establish an Eighth Amendment claim against any individual

Defendant, Plaintiff must provide facts demonstrating that he suffered from an objectively serious

medical need and that Defendants actually knew of and disregarded that need. *Roberts*, 917 F.3d

at 1042; *Dulany*, 132 F.3d at 1239.

In the IRR Plaintiff filed two weeks after the injury, he alleged that he had received "no

medical attention," "no x-ray," "nothing for pain," and "no ICE." ECF No. 1-1 at 7. That said,

Plaintiff admits in his Complaint that nurse Wilson provided him with ice and an ace wrap right

after the injury occurred. ECF No. 1 at 6. Also, SECC lay-in paperwork confirms that Plaintiff

had access to ice and an ace wrap for 14 days following the injury. ECF No. 1-1 at 3. During that

time, Plaintiff described the injury as painful, swollen, and that his left-hand palm had "turned

black." ECF No. 1 at 6.

Around two weeks after the injury, Plaintiff complained about not receiving "further medical treatment," including an x-ray. *Id.*; ECF No. 1-1 at 5. Approximately a month after the injury and two weeks after the first request, an x-ray was taken, and Plaintiff was diagnosed with a broken fifth digit. ECF No. 1 at 7. Plaintiff does not offer any complaints about the treatment he received following the x-ray diagnosis.

Plaintiff claims that Defendants failed to treat his hand injury and that they treated it inadequately. As to the failure-to-treat claim, Plaintiff admits to having received ice and a wrap. Therefore, there is no evidence that Defendants entirely failed to treat Plaintiff's injury. The facts do not demonstrate intentional mistreatment or a refusal to provide essential care. Furthermore, during this time, Plaintiff describes his palm as bruised, but he makes no claims concerning his finger. Based on the allegations, there is no evidence that any Defendant should have been aware of a serious medical need concerning Plaintiff's finger. Accordingly, there is no evidence that any named Defendant knew of, or should have known of, an injury to Plaintiff's finger and deliberately disregarded it.

As to the inadequate-care claim, Plaintiff asserts that the ice and wrap were not enough and that he had to wait too long for an x-ray. Plaintiff does not state what other medical care he believes he should have received. Regardless, "inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany*, 132 F.3d at 1239. Furthermore, according to the Eighth Circuit, unless the broken finger was "obvious to a layperson," the Defendants' decision to treat the injury conservatively with ice and a wrap does not establish deliberate indifference. *See Cannon v. Dehner*, 112 F.4th 580, 586-87 (8th Cir. 2024) (quoting *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995)) (reversing the district court's denial of qualified immunity against defendants who conservatively treated a broken wrist with ice and wrap prior to an x-ray establishing the fracture).

Because "[n]egligent misdiagnosis does not create a cognizable claim under § 1983," in order to demonstrate deliberate indifference, the facts pled must establish intentional maltreatment or a refusal to provide care. *Id.* (quoting *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009)) (citing *Dulany*, 132 F.3d at 1242). As discussed above, there is no evidence here of intentional maltreatment or a refusal to provide any medical care.

Additionally, to the extent Plaintiff is alleging that the delay in receiving an x-ray constituted deliberate indifference, he provides no medical evidence showing that the delay in care had a detrimental effect on his prognosis. *See Holden*, 663 F.3d at 342. "The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). Moreover, the Eighth Circuit previously found that a one-month delay in treating a fractured finger does not rise to a constitutional violation. *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). Similarly, a delay as brief and non-detrimental as Plaintiff alleges here does not amount to a claim for deliberate indifference to Plaintiff's serious medical needs.

Finally, any allegations of medical neglect or malpractice are not enough to state a violation of the Eighth Amendment. *See Estelle*, 429 U.S. 97, 106 (1976).

**Conclusion**

Plaintiff's motion for leave to proceed *in forma pauperis* will be granted and Plaintiff is assessed an initial partial filing fee of $3.00. Furthermore, based on a review of the pleadings under 28 U.S.C. § 1915, this case will be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Plaintiff fails to assert sufficient factual allegations indicating that any named Defendant violated the Eighth Amendment by providing deliberately indifferent medical care for his hand injury. As a result, this case will be dismissed without prejudice, and Plaintiff's other pending motions will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 2] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff shall pay an initial filing fee of $3.00 within **thirty (30) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding. *See* 28 U.S.C. § 1915(b)(1).

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the Complaint as to any Defendant because the Complaint fails to state a claim upon which relief can be granted.  Plaintiff's claims against Defendants Centurion Medical, Elizabeth Wilson, Maxine Doe, Ms. Jane Doe, Jane Sorabello, Jane Emanuel, John Doe, Jane Doe #2, and Bree Doe are **DISMISSED without prejudice**.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel [ECF No. 4] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to move to a different facility [ECF No. 5] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 29th day of June 2026.

_____
CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE

- 11 -